**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | |
| | : | 5:07-CR-19 (WDO) |
| **PAMELA GAIL BENSON,** | : | |
| | : | |
| Defendant | : | |

**ORDER**

On or about January 2, 2007, Agent Heath Eppinger of the Upson County Drug Task Force applied for a search warrant from Upson County Magistrate William Hughley. The affidavit in support of the search warrant cited a residence at 1225 Trice Road, Thomaston, Georgia as the object of the search. The affidavit further gave a detailed description of how to reach the residence and identified one "Pam Johnson" and one "Franky LNU" as the primary residents. The object of the search was specified as methamphetamine, plastic bags, scales, U.S. currency, bank records, telephone records, notes, ledgers, receipts, automobile titles, proceeds of controlled substance transactions and evidence of financial transactions relating to the obtainment and secretion of large sums of money acquired from engaging in narcotics distribution. As evidentiary support for the warrant request, the affiant described a sequence of events that had taken place at the location to be searched within 48 hours of applying for the warrant. TFA Eppinger's affidavit recited that he had been contacted by a reliable confidential informant identified as Reliable Confidential Informant #413. Informant

1

#413 informed TFA Eppinger that he/she had been to the residence of Pam Johnson and Franky LNU at 1225 Trice Road, Thomaston, Georgia. Informant #413 advised TFA Eppinger that while at the residence he/she saw Pam Johnson and Franky LNU in possession of a quantity of methamphetamine packaged for distribution.

Based on the information supplied via the affidavit, Magistrate Hughley issued a warrant on January 2, 2007 for the search of 1225 Trice Road. The search warrant authorized the officers to search for Methamphetamine, bags, scales, drug related objects, drug related documents and money.

On January 2, 2007, at approximately 5:30 P.M., officers from the Upson County Drug Task Force executed the search warrant at 1225 Trice Road. Defendant stated the agents entered her house "dressed in black pants, black t-shirts (or the like) and with what appeared to be bullet shields, entering her living room from outside the house without invitation, without her consent and without knocking or otherwise announcing their presence." When Defendant asked the agents why they were in her house, they responded that they had a search warrant, although Defendant claims she never saw the warrant. The Department of Family and Children Services was eventually called to care for the younger children present at the house during the search. The report filed after the search states that, while other officers searched the residence, Commander Michael Ogletree of the Narcotics Task Force advised the Defendant of her Miranda rights and obtained an oral waiver of those rights. After waiving her Miranda rights, Defendant signed a written statement taking

2

responsibility for the contraband found at 1225 Trice Road. Defendant contends she made the statement out of fear that her 17-year-old son would also be arrested because one of the officers allegedly stated they would "put him under the jail" for his part in the alleged drug transactions. During the course of the January 2, 2007 search of 1225 Trice Road, officers recovered approximately 3.5 ounces of methamphetamine, approximately 2.5 pounds of marijuana, more than $15,000 in United States currency and numerous other controlled substances. Officers also recovered various materials commonly used in manufacturing and trafficking of methamphetamine.

Following the search of 1225 Trice Road, Defendant Pamela Benson was arrested based on the contraband seized. Arrest warrants were subsequently applied for by TFA Eppinger and issued by Magistrate William Hughley for the following offenses: Trafficking in Methamphetamine; Manufacture of Methamphetamine; Possession of Marijuana with Intent to Distribute; Possession of a Controlled Substance; Cruelty to Children, 2nd Degree; and, Possession of Firearm During the Commission of a Crime.

Pursuant to the contraband that was discovered while serving the January 2, 2007 warrant, TFA Eppinger applied for a second search warrant for the residence on January 3, 2007 from Magistrate Hughley. The affidavit gave a detailed description of how to reach the residence, described the residence itself and identified one "Pamela Benson" and one "Frank Wilburn" as the primary residents. The object of the second search was specified as a computer located in the master bedroom of the residence believed to possibly contain

3

information regarding the manufacture of Methamphetamine. As his basis to establish probable cause for the warrant, TFA Eppinger recited that, while at the residence serving the search warrant issued on January 2, 2007, officers seized materials relating to the manufacture of methamphetamine and also observed a computer in the master bedroom of the residence. Based on the information supplied in the affidavit, Magistrate Hughley issued a second warrant on January 3, 2007.

On January 3, 2007, at approximately 2:00 P.M., officers from the Upson County Drug Task Force executed the search warrant at 1225 Trice Road and seized two Dell laptop computers and various other materials used to manufacture methamphetamine. Defendant was thereafter charged in this Court with one count of possession with the intent to distribute methamphetamine.

Defendant Benson has filed several motions to suppress the evidence seized and to suppress the written statement she gave the officers. Defendant's primary basis for her original motion was that the first search and seizure were conducted without a warrant. Evidence that has been produced since the original motion was filed shows that a warrant was in fact issued. In her amended motions, Defendant claims there was no probable cause for the warrants. Specifically, Defendant contends that the affidavit supporting the first warrant failed to provide a time frame for the alleged sighting of illegal activity; failed to provide any knowledge basis of the informant; failed to show there was any corroboration of the informant's information; shows that the names given by the informant do not match

4

any information the agent showed in the affidavit; and, failed to show that the informant had "anything to lose" from supplying information but "gained money." Defendant further argues that the affidavit failed "to identify the particulars of Confidential Informant 413's alleged viewing of the individuals in possession of the drugs in question: such as, the quantity of the illegal substances, the exact location on the property where the alleged sighting occurred, the particulars of the informant being at the residence, his/her method of identifying the alleged substances or his familiarity with Pam Johnson and Franky LNU. The latter argument is based on Pam Johnson apparently also being known as Pamela Benson, the name used in the second warrant and for the charge in the case at bar. Defendant also contends the affidavit failed to reveal the following pertinent information about the informant: the manner in which he contacted Agent Eppinger, that Eppinger failed to identify his contact was a "true contact with the actual entity" known as "Confidential Informant #413," the existence of a criminal record against the informant or the specific type and/or amount of payment to the informant. Finally, Defendant seeks to have the written statement suppressed wherein she claimed ownership and responsibility for the drugs seized, arguing that the statement was not voluntarily given but was given under fear that her son would also be arrested.

### *Probable Cause for Warrant*

Although Defendant now concedes there was a warrant for the first search, she contends there was no probable cause for either warrant. The standard for determining

5

probable cause for the issuance of a search warrant is a totality of the circumstances. <u>Illinois v. Gates</u>, 462 U.S. 213, 230, 103 S. Ct. 2317 (1983). Based on this test, the magistrate judge "makes a practical, common-sense decision whether, given all circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of the persons supplying the hearsay information, there is probable cause to issue the search warrant. <u>Id.</u> at 238, 2332. The "duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for concluding' that probable cause existed." <u>Id.</u> at 238-239, 2332. Great deference is accorded the magistrate's determination of probable cause for issuance of a search warrant. <u>United States v. Gonzalez</u>, 940 F.2d 1413 (11th Cir. 1991). "The government 'must reveal facts that make it likely that the items being sought are in that place when the warrant issues' to satisfy the probable cause standard." <u>United States v. Green</u>, 40 F.3d 1167, 1172 (11th Cir. 1994) (citation omitted). Finally, information provided in a search warrant request must be timely for probable cause to exist at the time the magistrate judge issues the search warrant. <u>Id.</u> (citations omitted).

In the case at bar, the affidavits supplied by Agent Eppinger for each search warrant provided a sufficient basis for the Magistrate to conclude that probable cause existed. First, the information in the first search warrant affidavit was timely. Information was provided that, within 48 hours of the day the agent sought the warrant, a large amount of drugs had been seen at Defendant's residence "packaged for distribution." While Defendant contends this is not specific enough to indicate precisely when the informant was at the residence, the

6

wording of the affidavit indicates it had been in the past 48 hours. Further, the affidavit stated the believed name of the suspects and a precise address for their location. The first affidavit also stated that Agent Eppinger based his request for a search warrant on his "vast experience and training," which has not been controverted. The first affidavit further stated that the information that was provided by informant #413 was reliable based on the past reliability of that informant - having been known to the agent for 3 years and having provided information for at least 8 arrests. The second search warrant provided a sufficient basis for probable cause in that it was based primarily on the first hand knowledge of Agent Eppinger having viewed drugs and drug paraphernalia during the previous search. Based on the information provided from the trusted source, there was evidence of ongoing drug activity sufficient to establish probable cause for the first search warrant. Considering the high level of deference to be given to the Magistrate's determination that sufficient probable cause existed to grant Agent Eppinger's request for a search warrant, Defendant has presented no argument or evidence sufficient to overcome the Magistrate's findings of probable cause. Moreover, even if, as argued by Defendant, the Magistrate was somehow misled by any overreaching on Agent Eppinger's part, the affidavit was not "so lacking" that belief in the existence of probable cause would be unreasonable. The "good faith" exception to the exclusionary rule would therefore apply in this case even if there was not sufficient probable cause for the warrants. See United States v. Robinson, 336 F.3d 1293, 1296 (11th Cir. 2003) ("good faith" exception applies except "(1) where the magistrate or judge in issuing a warrant

was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth; (2) where the issuing magistrate wholly abandoned his judicial role; (3) where the affidavit supporting the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where, depending upon the circumstances of the particular case, a warrant is so facially deficient, i.e., in failing to particularize the place to be searched or the things to be seized - that the executing officers cannot reasonably presume it to be valid) (citation omitted).

### *Reliability of Informant*

Defendant contends the government has failed to prove the information from the informant was reliable and thus failed to prove the information was sufficient to support the first warrant request. "An informant's credibility is determined based upon the totality of the circumstances, including the traditional review of the basis of his knowledge and reliability." Green, 40 F.3d at 1172 (citing Illinois v. Gates, 462 U.S. at 238). In the case at bar, the information was obtained from an informant whom the agent had known for 3 years and who had previously given information that lead to at least 8 arrests. There is no evidence whatsoever that the informant was unreliable or provided inaccurate information at that time or at any time in the past. Based on the totality of circumstances in this case, there is no evidence of any reason to not rely on the information provided by the well-known, trusted source.

*Admissibility of Written Statement*

Defendant contends the statement in which she accepted responsibility for the drugs and other items seized should be suppressed because she was "coerced" into making the statement by the officer allegedly saying her son would go to jail if Defendant did not tell the officers to whom the drugs belonged. "Coercive conduct normally involves an exhaustively long interrogation, the use of physical force, or the making of a promise to induce confession." United States v. Williams, 2006 WL 3313752, *2 (S.D. Ga. Nov. 13,2006) (citing Colorado v Connelly, 479 U.S. 157, 163 (1986); United States v. Mendoza-Cecelia, 963 F.2d 1467, 1475 (11th Cir.1992) ("An official who encourages cooperation with the government and who informs the defendant of realistically expected penalties for cooperation and/or non-cooperation does not offer an illegal inducement.")). In this case, the alleged threats to investigate and/or arrest Defendant's son "were not of such a gravity that an ordinary person . . . would have lost the will to resist." United States v. Haynes, 301 F.3d 669, 684 (6th Cir. 2002) (statement not coerced although officers threatened to involve defendant's daughter in investigation). A review of the actual evidence presented and a consideration of the totality of the circumstances of the case shows that Defendant's statement was given after a Miranda warning and done so freely and voluntarily.[1]

---

[1] After a review of the various motions, amended motions and briefs that adopted in part and rejected in part arguments made in previous motions, it does not appear that Defendant actually intended to request a Jackson v. Denno hearing regarding the voluntariness of her statement or that she still claims she received no Miranda warning, or perhaps received an ineffective/insufficient warning. See Cunningham v. Zant, 928 F.2d 1006 n.1 (11th Cir. 1991) ("In Jackson v. Denno, 378 U.S. 368, 84 S. Ct. 1774 (1964), the Supreme Court held that the trial judge must determine, at a separate hearing, that a confession is voluntary before it may be heard by a jury."). However, the Court notes that the facts and circumstances of this case do not support Defendant's contention that she was

Based on the foregoing, Defendant's motions to suppress the items seized during the searches and to suppress her written statement are DENIED.[2]

**SO ORDERED this 19th day of June, 2007.**

**S/
WILBUR D. OWENS, JR.
UNITED STATES DISTRICT JUDGE**

---

"coerced" into making the statement, particularly considering the only predominant theme in her arguments is the lack of a search warrant for the searches which has now been shown to be a frivolous argument.

[2]Defendant also argued in one of the versions of her motions that Georgia law applied to the finding of probable cause and the sufficiency of the affidavit and warrant in this case. However, it is well established in this circuit that "the admissibility in federal court of the products of state searches and seizures is controlled by federal law." United States v. Clay, 355 F.3d 1281, 1283 (11th Cir. 2004) (citations omitted). Whether Georgia law permits or prohibits something that goes to the sufficiency of a warrant "is irrelevant in a federal court's independent evaluation of the admissibility and the reasonableness of a search and seizure by state officers utilized in a federal criminal prosecution." Id.